WOODS *against* MORRELL AND OTHERS.

July 27th.

Exceptions to an answer for impertinence as well as insufficiency, are made in writing, and referred, at the same time, to the master, and are disposed of together. (This is different from the practice of the court of chancery in *England.*)

The best rule to ascertain whether the matter be impertinent, is to see whether the subject of the allegation could be put in issue, or be given in evidence between the parties.

An answer ought not to go out of the bill, to state what is not material or relevant to the case stated in the bill. Long recitals, stories, conversations, and insinuations tending to scandal, are impertinent. So, facts not material to the decision are impertinent, and, if reproachful, are scandalous.

But if the plaintiff will put impertinent questions, he must take impertinent answers. It will depend, however, on the reason of the thing, and the nature of the case, how far a general inquiry will warrant an answer leading to particular details.

The defendant must answer directly and precisely to every material allegation in the bill, and not by way of a negative pregnant. The charges are not to be answered literally ; but the defendant must confess or traverse the substance of each charge positively, and with certainty. Particular and precise charges must be answered particularly and precisely, and not generally, though the general answer may amount to a full denial.

If a fact is charged to be within the defendant's personal knowledge, he must answer positively, and not to his remembrance or belief; and as to facts not within his own knowledge, he must answer as to his information and belief, not as to his information or hearsay, without stating his belief one way or the other.

THE bill stated, that *William W. Sackett,* being indebted to the plaintiff, on the 30th of *July,* 1812, conveyed to him certain lots of land in the town of *Newburgh,* in *Orange* county, *in trust* for all his creditors. The plaintiff, at the same time, made a declaration of trust, that the plaintiff was to sell parts of the land unencumbered, and to pay off encumbrances, and then to pay the debts, and return the surplus to *Sackett.* The plaintiff took possession of the land and leased it. There was a mortgage on the land, to *William Lawrence,* and a prior judgment, of *October,* 1811, in favour of *Austin & Andrews,* who assigned it to the defendant,

*Morrell*, on the 10th of *January*, 1812, for a less sum. There was also a judgment in favour of *E. Griswold*, of *June*, 1812, another in favour of *Duryee and Heyer*, docketed in *August*, 1812, who refused to receive payment and assign it. Executions were issued on the judgments, and the sheriff was required to sell in parcels; but, on *February*, 1813, he sold all the premises together, on all the judgments; and declared the sale to be subject to all encumbrances. *Morrell* and *Weller*, defendants, by their Attorney, *Sleight*, one of the defendants, purchased the property, at the sale of the sheriff, for 1,200 dollars; and a conveyance was accordingly executed to them. The bill charged fraud in the sale, on the part of the defendants, with a view to defeat the trust. Actions of ejectment were brought by the defendants, under the sheriff's deed.

A suit, by *Lawrence*, on his mortgage, was pending in chancery at the time of the sheriff's sale. The defendants put in separate answers, which are not necessary here to be stated. Numerous exceptions were taken to each of the answers, some for insufficiency and others for impertinence. On a reference to the master, the exceptions were generally allowed by him, and exceptions were taken, on the part of the defendants, to the master's report.

The cause came on to be heard on the exceptions to the report.

It was objected, on the part of the defendants, that it was not the course and practice of the court to make exceptions in writing to answers for impertinence, and especially joined with other exceptions for insufficiency; that exceptions for impertinence were first to be disposed of, before the answer was to be questioned for insufficiency. They cited 1 *Har. Ch. Pr.* 310. 324, 325. 14 *Ves.* 535, 536, 537.

*Burr*, for the defendants.

*P. A. Jay*, for the plaintiff.

THE CHANCELLOR. The *English* practice is not to 1814. make formal and special exceptions in writing, in the first in- ~~~~~ stance, to an answer, for scandal or impertinence, as is done WOODS for insufficiency; but on a suggestion, by motion, of such MORRELL. matter, the answer is referred to a master to look into, and if he certifies against the exception, the plaintiff may except, in writing, to the report, and specify the particular parts which are scandalous or impertinent; and this reference for imper- tinence must precede one for insufficiency. I find, how- ever, that a different practice prevails here in this court, and instead of a loose and general suggestion, the party does, in the first instance, what he eventually may be obliged to do under the *English* practice, and the objections to the an- swer, as well for impertinence as for insufficiency, go at once to the master, and are disposed of together. I do not per- ceive any strong objection to this mode of practice, which ought to induce me to interfere and change it. It may save time; for it admits of but one reference to the master, instead of two, and by reducing the exceptions to writing, and spe- cifying the parts that are deemed impertinent, there is greater precision and certainty in the proceeding.

With respect to the merit of the exceptions, I would first, generally, observe, that from the short experience I have had in this court, it appears that much tedious discus- sion and delay have arisen from what are deemed defective or impertinent parts of an answer. The general rules on this subject are founded in good sense and sound justice, and they cannot be too well understood, nor too strictly en- forced; the neglect of them will always receive disapproba- tion. If answers are to be made the vehicle of recrimina- tion, or of matter of mere history, or inducement, or scandal, not pertinent to the case, and only useful to excite prejudice, the character of pleadings, in this court, would be degraded. And if the defendant is not compelled to a full, frank, and explicit disclosure of every thing properly required of him, and resting in his knowledge, information, or belief, one of

the most salutary ends of the jurisdiction of this court would be defeated.

1. As to *impertinent* matter, the answer must not go out of the bill to state that which is not material or relevant to the case made out by the bill. Long recitals, digressions, stories, conversations, and insinuations tending to scandal, are of this nature. Facts not material to the decision, are impertinent, and if reproachful, they are scandalous; and, perhaps, the best test by which to ascertain whether the matter be impertinent, is to try whether the subject of the allegation could be put in issue, and would be matter proper to be given in evidence between the parties. If, indeed, the plaintiff will put impertinent questions, he must take the answer to them, though it be impertinent; but it will depend upon the reason of the thing, and the nature of the case, how far a general inquiry will warrant an answer leading to detail. The court will always feel disposed to give the answer a liberal consideration, on this point of matter irrelevant, and to consider whether it can have any real and proper influence upon the suit, *having regard to the nature of it as made by the bill.* (*Coopers' Treatise,* 318. *Mitford,* 248. *Peck* v. *Peck, Mosely,* 45. *St. John* v. *St. John,* 11 *Ves.* 526.) The case of *Smith* v. *Reynolds,* (*Mosely,* 69.,) gives us a sample of matter, which was at the same time impertinent and scandalous. The plaintiff filed his bill to be relieved against a stale bond, and mentioned the fact of a subsequent bond, which he had *somehow lost,* and by reason of which, he was obliged to sue the defendant in chancery, and had recovered. The defendant, in his answer, said, that he did not believe that the plaintiff had lost the bond last mentioned, *but believed that he had fraudulently concealed or destroyed it;* and the chancellor, very properly, held, that the defendant had denied what was not material, and what the plaintiff did not require him to answer; and that he had gone out of the way purely to reflect on the plaintiff.

2. With respect to the *sufficiency* of the answer, the general rule is, that to so much of the bill as is material and necessary for the defendant to answer, he must speak directly, without evasion, and not by way of *negative pregnant.* He must not answer the charges merely literally, but he must confess or traverse the substance of each charge positively, and with certainty ; and particular precise charges must be answered particularly and precisely, and not in a general manner, even though the general answer may amount to a full denial of the charges. Indeed, as Lord *Eldon* observed, the policy of the proceedings in this court is, that a general·denial is not enough ; but there must be an answer to the sifting inquiries upon the matter charged. If a fact be charged which is in the defendant's own knowledge, he must answer positively, and not to his remembrance or belief; and as to facts not within his knowledge, he must answer as to his information or belief, and not to his information or hearsay merely, without stating his belief one way or the other. (*Bohun's Cur. Can.* 111. *Wyatt's P. Reg.* 13, 14. 1 *Har. Ch. Prac.* 302, 303. *Mitford,* 246, 247. *Cooper's Equ. Pl.* 313, 314.)

3. In the application of these general principles to the exceptions before me, the task is easy, because, by applying the case to the rule, it will readily be perceived that most of the exceptions are well taken for impertinence and for insufficiency. I shall not go into particulars. The exceptions allowed are noted, and they, for the most part, speak for themselves. Most of what was said by the defendant, *Morrell,* for instance, concerning the history of a voluntary deed of trust from *Sackett,* to him and others, was irrelative to the subject matter of the bill, viz. the fraudulent sale and purchase under the execution; and it is, at the same time, replete with insinuations and reflections against the plaintiff. I accordingly allow twenty-five of the exceptions taken to the answer of *Morrell,* and ten of those taken to the

1814.    answer of *Weller*, and nineteen of those taken to the answer
         of *Sleght*.

The following exceptions to the answer of *George Morrell*
are allowed, viz. the 2d, 3d, 6th, 7th, 9th, 11th, 12th,
14th, 16th, 17th, 19th, 21st, 22d, 25th, 26th, 27th, 28th,
29th, 31st, 32d, 33d, 34th, 35th, 36th, and 37th.

The following exceptions to the answer of *Hiram Weller*
are allowed, viz. the 2d, 4th, 6th, 7th, 8th, 9th, 10th, 12th,
13th, 14th.

The following exceptions to the answer of *Solomon Sleght*
are allowed, viz. the 1st, 2d, 3d, 4th, 7th, 8th, 9th, 10th,
11th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 24th,
and 25th.   The question of costs is reserved.

Exceptions allowed.