## TUCKER *vs.* THE CHESHIRE RAILROAD CO.

A statement in an answer explanatory of and showing the reason for another statement in the answer is not impertinent.

A bill prayed for an injunction against a railroad corporation, upon the ground that a certain railroad bridge which the respondents intended to build across the Connecticut River would injure the orator's bridge, which had been erected under a charter from the Legislature. The answer stated that the orator and his wife owned certain land adjacent to the bridge and held it and the franchise of the bridge by the same title. It was then stated that the assessment of damages to them was for injuries sustained by them as owners of the bridge and franchise, and also as owners of the land. *Held*, that the statement of the ownership of the land was not impertinent, because it explained the reason of the assessment.

The court will not strike matter out of an answer as impertinent unless its irrelevancy be clearly shown.

If the matter excepted to, be such as may require examination in some future stage of the case it will not be stricken out, but the benefit of the exception will be reserved to the orator upon the final hearing of the cause.

A bill prayed that the respondents might be enjoined from erecting a railroad bridge across the Connecticut River upon the ground that it would injure the orator's bridge by infringing the vested rights conferred by his charter. The answer stated that railway communications were not discovered and brought into use until long after the date of the orator's charter. *Held*, that this statement was not impertinent, because in order to determine the rights of the parties it might become necessary to inquire whether the orator's bridge were intended and calculated to answer the purposes of a railway bridge, and whether the latter were so different from the former that it could not be considered as violating the exclusive privileges conferred by the orator's charter.

The respondents are bound to deny or admit all the facts stated in the bill, with all their material circumstances, without special interrogatories for that purpose.

IN EQUITY.    The following case was stated in the bill.

On the 30th day of December, 1783, the Legislature of New Hampshire granted to Enoch Hale, of Rindge, and his heirs forever, " the exclusive right and privilege of building and keeping a bridge over the Connecticut, anywhere between the upper end of Bellows Falls and a certain rock in said Falls, and the exclusive right of receiving from any persons who might pass over the bridge, either by themselves or with horses, carriages, cattle, or creatures of any kind, or any other thing, such tolls as should be allowed by the Justices of the Quarter Sessions."

Tucker *v.* The Cheshire Railroad Company.

An Act passed on the 15th day of June, 1797, provided that no person, without the consent of the owners of the grant, should build or keep any bridge over the Connecticut, at any place between the southerly bounds of the grant, and a point distant two miles down the river, and from the northerly bound, to a point two miles up the river.

Certain specific rates of toll were given by the Act of June 15th, 1804.

On or about the 14th day of May, 1790, Frederick W. Geyer became the owner of the grant, and died on the 18th day of March, 1821.

By his will, dated on the 12th day of October, 1820, he devised this property to Rufus G. Amory and Richard D. Tucker, in trust for the use of Mrs. Nathaniel Tucker for her life, but subject to an annuity payable to a son of the testator, and after her death to the use of her children, or such of them as she might appoint.

On the 21st day of March, 1848, the trustees named in the will having died, the orator was appointed trustee under the will by the Court of Probate.

A bridge was erected under the charter by Enoch Hale, the original grantee, and since his death the trustees have kept it in repair, and there has been a large amount of travel across it, from which very considerable profits have been derived.

The defendants were chartered on the 27th day of December, 1844, and under the charter of that date they have acted. They deny the exclusive right of the orator; and have laid a railway to a point within his exclusive bounds, and without making or causing to be assessed to the orator, trustee as aforesaid, any compensation, threaten to build a bridge by the side of the orator's bridge, in violation of his rights. They allege that they have the right so to do, and that the erection of the bridge would not injure him, or deprive him of his rights; that he, as trustee, would be entitled to no compensation or damages therefor, and therefore they have not offered it. They allege that damages have been awarded to the orator and to Mrs. Tucker by the commissioners, but the orator alleges that they were not awarded

for any injury done to the franchise, but for other property taken by the defendants.

The bill also alleges that the several acts of the Legislature created a contract between the grantees and the State, and that the franchises were private property, which ·could not be taken away without the consent of the orator, or without compensation.

It was also averred in the bill that Messrs. Howland and Farrar, two of the railroad commissioners by whom the damages for the land were assessed, were interested in the Cheshire Railroad Company, and therefore were incompetent to act upon the matter.

The case stated by the answer was, that the respondents, acting under their charter and the laws of New Hampshire, have proceeded in all things according to law ; that the orator and Mrs. Tucker were duly notified ; that they were the occupants and owners in the same· right, of the adjacent land and the franchise of the bridge, and that damages were awarded them for the injury to the land and the franchise together, which damages have been duly paid or tendered.

Various exceptions were taken to the answer, as follows:

For impertinence.

1. Because it is alleged in the answer that the orator and Mrs. Tucker, on the 8th day of May, 1847, occupied the land adjacent to the bridge, and on the easterly side of the Connecticut River, near to, and adjoining the bridge, which land the respondents aver was then held in the same right and under the same title as the franchise of the bridge, and were believed to be the true and only proprietors and owners of the land and bridge.

2. Because it is alleged in the answer that the mode of travel and transportation by railroad was not discovered and brought into use until long after the alleged grant to Enoch Hale.

For insufficiency.

3. Because it is charged in the bill that the building of a railroad, as contemplated by the respondents, within the exclusive limits of the orator, and the use of the bridge to be constructed in connection with the railroad of the respondents, will be pro-

ductive of great and irreparable injury to the franchise of the orator, by diverting travel and transportation from the bridge of the orator to the railroad bridge, resulting in a great loss of tolls and profits to the orator, and the respondents have not in any-wise answered said matters thus charged.

4. Because the bill alleges that the respondents threaten to build, and have made preparations for building a railroad bridge over the Connecticut River, within the exclusive limits of the orator, without causing to be assessed, in any manner prescribed by law, any compensation for the injury which would be caused thereby to the franchise ; and it is also charged, that a certain assessment, made by the railroad commissioners of such damages, is void for the reason that Messrs. Howland and Farrar, two of the commissioners, were, at the time the assessment was made, interested in the stock of the Cheshire Railroad and in its value. And the respondents have not, to the best and utmost of the knowledge, remembrance, and belief, of Thomas M. Edwards, the President of the corporation, by whom they have answered, disclosed, and set forth whether, at the time aforesaid, the said ·Howland and Farrar were or were not interested in the stock as above-mentioned.

*Vose*, and *Shafter*, (of Vermont) for the orator.　Any thing not material, and not responsive to the allegations in the bill, is impertinent.

The answer states that there were lands easterly of the bridge, owned by Mr. and Mrs. Tucker.　The object of the bill is to restrain the respondents from injuring the franchise.　The answer does not state that these lands were affected in any way by the franchise, but merely says that they were held under the same title as the franchise, and that the damages were assessed as well for the lands, as for the franchise.　As the lands are recognized as not being within the franchise by the answer, they have nothing to do with it, and the statement about them is impertinent.

The answer is also impertinent in stating that railways were invented and brought into use since the year 1782.　This was

not called for by the bill, and is not responsive to it. Perhaps the respondents mean to allege that a railroad bridge is not a violation of our charter. In the case of the *Enfield Co.* v. *Hartford and N. H. Railroad Co.* 17 Conn. 50, the respondents said that a railroad bridge was not such a bridge as the parties contemplated should not be built. The court said that it was not strictly speaking a bridge, because it was not meant to accomplish the ordinary purposes of a common bridge. But it did much of the business which the orators would otherwise have had the benefit of.

The answer is insufficient, because it does not answer the matters stated in the bill as to the injury to the orator by diminishing the tolls, and this the answer should do.

The bill alleges that no damages were assessed for the franchise. The attempt to assess damages failed because two of the commissioners were interested in the road.

The answer alleges that the commissioners were competent. This is not an answer to the charges in the bill, because the facts therein stated should be answered according to the knowledge, information, and belief of the respondents. 2 Dan. Ch. Pr. 835. A general denial is not enough. There should be a specific, positive, and precise denial, and the answer contains no such denial of the interest of the commissioners. The competency is a question of law, and is a conclusion to be made by the court from the facts. The answer may state that the commissioners are competent, because it may be the opinion of counsel that an interest in the stock does not disqualify them from acting as commissioners.

*Wheeler*, for the respondents. As to the first exception for impertinence, we merely stated the facts as they were. The reason for stating the ownership of the land, as well as of the franchise, and the joint appraisal, was, that they were so connected by the title and the appraisal of the commissioners, that no full and intelligible statement could be made which did not include these facts. The respondents are not to be confined, in their answer, to a naked admission or denial of the allegations

in the bill. They may state such matters as will explain their position fully, and show the nature of their justification. All the facts stated are necessarily connected, they show the nature and reason of the assessment, and must come out in the proof.

As to the second exception, relating to the discovery of the mode of transportation by railroads subsequent to the grant to Hale, the allegations in the answer are pertinent in reference to the alleged infringement of the rights secured by the original charter. The court are called upon to give a construction to the charter, and it is a part of the respondent's case that the grant to Hale does not include all possible modes of transportation not then known. It seems to us that it would be an extraordinary interpretation of this grant, to hold that Hale and his grantees were thereby clothed with the exclusive right of providing all the means of crossing the river within the chartered limits, and that, in all coming time, the public are to be confined to the orator's bridge, although they may have occasion to pass in other modes and for other purposes, than originally contemplated, and for which the bridge is adapted.

The respondents believe that they may, without subjecting themselves to the objection of impertinence, allege the fact that the discovery and use of railroads and railroad bridges are of recent date, and that it could not have been the intention of the legislature to exclude from the chartered limits, such a bridge as is to form a part of the railroad — a bridge not intended for public travel in the sense in which these words were used at the time of the grant. Both structures may, in common language, be called *bridges*, but they are intended for different purposes, and might well be designated by different names. The erection of a bridge within the exclusive limits of a ferry, if it do not obstruct the convenient use of the latter, is no infringement upon the rights of the ferry. *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. Rep. 35. Grants of this character are not to be extended by construction.

An exclusive right to make communications by post, would not be infringed by the incorporation of a line of telegraphic communication. It does not follow that any thing is impertinent

because its bearing cannot be seen at once. The court will not order it to be struck out, unless it be clearly out of place in the answer. Story, Eq. Pl. 661. If there be any doubt whether the statement be impertinent, the court allows it to remain.

As to the alleged insufficiency of the answer in relation to the possible injury to the franchise by the railroad, the statements of the bill on this point are answered for all purposes the orator can have in view. The intention to build the bridge is admitted. If enough be stated, so that the orator can have a decree if he be entitled to one by law, this is all that can be required. He cannot say what effect our bridge may have upon the orator's interests. Perhaps it will cause the erection of buildings, and an increase of population, so that the orator's bridge will be more profitable. Our crossing between the limits of the grant does no more injury than would be caused by crossing above or below them. We do not think this material. 7 Paige, 517. As to the other exception, relating to the interest of the commissioners, the bill states that they are interested, and we say they are competent. The orator cannot take evidence of the interest as he has attempted to do, after the filing of his bill, and bring the matter into our answer, and so ask us to weigh his evidence. It is enough that the answer denies the allegations in the bill.

The bill contains no interrogatories, and we are not bound to answer to any particular matter, unless we are specially interrogated in relation thereto. Such we understand to be the English rule, and the rule of the Supreme Court. 2 Dan. Ch. Pr. 820, (Perkins's Ed.)

We also contend that the orator's bridge does not accommodate the public, in the way in which the public now require to be accommodated. We then, by our bridge, do not deprive the orator of any profit ; for he could not furnish the public with the mode of transportation which we propose, and which our charter authorizes.

*Shafter*, in reply. The respondents say that where an incidental advantage would arise to our bridge by reason of the erection of theirs, their erection will not be within the exclusive

words of our charter, unless it be such an advantage as the par-
ties might anticipate.   But a bridge means now what it meant
in 1783.   It is a structure of wood or other material for passage
and transportation.   Its material is not an element of the defini-
tion, nor is the mode in which it is crossed.   It is still a bridge
although it may be a foot bridge ; and we have a right to take
toll for every thing that may pass over a bridge.   We might
erect a bridge for the transportation of locomotives, but the
respondents could not do so.   A bridge and a ferry are gene-
rically different things ; and there is no analogy between commu-
nications by telegraph and by the post.

There is enough disclosed in the case to entitle us to a decree.
But the respondents say that we should show irreparable damage,
something that amounts to a nuisance.   If they know nothing
but what appears in the answer they should have so stated.   But
they deny the incompetency of the commissioners and thereby
assume that they know the facts relating to their interest, or
else they have jumped at a conclusion.   If they know the facts,
they should have stated them, that the court might draw the
conclusion.

As to the interrogatories, we understand the practice to be
that a general interrogatory is broad enough to draw out specific
answers.

GILCHRIST, C. J.   The bill alleges that the damages assessed
to Mr. and Mrs. Tucker, were not awarded as compensation for
any injury to the orator's franchise, but entirely for other and
distinct property taken by the respondents.

The answer states that Mr. and Mrs. Tucker, on the 8th day
of May, 1847, occupied the land adjacent to the bridge on the
east side of the river, and held it under the same right, and by
the same title as the franchise of the bridge, and are believed to
be the true and only proprietors of the land and bridge.

This is excepted to as impertinent.   The answer also states
that the damages were assessed to them, as well for injuries sus-
tained by them, as owners of the bridge and franchise, as of the
land.

It is relevant to the case of the respondents to state that the assessment included the damages done to the franchise. This is responsive to the bill, and is not excepted to.

But the statement that the franchise and land were owned in the same right, is explanatory of the averment that the assessment included the damages both for the franchise and the land, and shows the reason for it. The damages were thus included because the franchise and the land were owned in the same right.

An exception to a part of an answer as impertinent, which refers to and explains the meaning of a schedule annexed to such answer, without also excepting to the schedule itself, must be disallowed. *McIntyre* v. *Union College*, 6 Paige, 240. If exceptions would mutilate the answer unnecessarily, by breaking up sentences or clauses which ought to stand or fall together, they should be disallowed. *Franklin* v. *Keiler*, 4 Paige, 382.

We think that this exception must be disallowed. An exception for impertinence must be supported *in toto*, or it must fail altogether. Story, Eq. Pl. § 266.

There is another ground for disallowing the exception. If Mr. and Mrs. Tucker owned the land and the franchise in the same right, there could be no reason for awarding the damages separately. If they owned the property in different rights, the damages should have been separated. The allegation is that they owned them in the same right. This is relevant. If made out in proof, it may dispose of the orator's allegation that no damages were awarded for the franchise.

By § 5, ch. 128, Rev. St., railroad commissioners are to assess damages in the same way as road commissioners, and they, by ch. 51, § 2, are to proceed as selectmen do. By ch. 49, § 3, the selectmen are to give notice to the owner if known and resident in this state, otherwise to him who has the care and possession of the land; to the occupant.

The answer states the belief of the respondents to be that Mr. and Mrs. Tucker were " the true and only proprietors and owners of the land and bridge."

3 *

Amory and R. D. Tucker, the original trustees, having died, on the 21st day of May, 1848, the orator was made trustee.

It appears that at the time when the respondents began to build their bridge, or to take the preliminary steps thereto, the legal title to the franchise was in Amory and R. D. Tucker, both of whom lived out of this state.

It became necessary to allege that the orator and Mrs. Tucker, were the occupants, because the respondents desired to show the reason why the damages were assessed together, without specifying what was for each right; that is the right to the land and to the franchise.

The second exception for impertinence; is because the answer alleges that the mode of travel by railroad was not discovered and brought into use until after the grant to Hale.

The court, in cases of impertinence, ought, before expunging the matter alleged to be impertinent, to be especially clear that it is such as should be struck out of the record; for this reason, that the error on one side is irremediable, on the other it is not. If the court strikes it out of the record it is gone, and the party may then have no opportunity of placing it there again; whereas, if it is prolix or oppressive, and is left on the record, the court, at the hearing of the cause, has the power to set the matter right in point of costs. *Davis* v. *Cupps*, 2 Younge & Coll. New Rep: 443; Story, Eq. Pl. § 268. If the fact stated is wholly immaterial, the answer may be excepted to for impertinence, or the complainant will have the benefit of the objection on the hearing. *Clissold* v. *Powell*, 2 Madd. Ch. 355; *Spencer* v. *Van Duzen*, 1 Paige, 566. It ought to be clear to demonstration that the matter complained of is impertinent, before that which if wrong, is irremediable, is done. Story, Eq. Pl. § 268. The court will always feel disposed to give the answer a liberal consideration on this point of matter irrelevant, and to consider whether it can have any real and proper influence on the suit, having regard to the nature of it, as made by the bill. *Woods* v. *Morrell*, 1 Johns. Ch. 106. If the matter of an answer is relevant, that is, if it can have any influence whatever in the

decision of the suit, either as to the subject-matter of the controversy, the particular relief to be given, or as to the costs, it is not impertinent. *Van Rensselaer* v. *Bruce*, 4 Paige, 177 ; *Hawley* v. *Wolverton*, 5 Paige, 522.

Applying, then, the principles recognized by these authorities to the question raised by this exception, it is evident that in order to determine the rights of the parties it may become necessary to inquire whether the bridge, proposed to be erected by the respondents, be a violation of the orator's charter, and the exclusive privileges conveyed thereby. What kind of travel it is calculated to accommodate, how far the purposes it is designed to accomplish, are the same with those intended by the orator's bridge, are matters which we may be called upon to examine. And in this view it is by no means clear that we may not find it proper to consider the allegation that railway communications were not brought into use until after the grant to Hale. Does a railroad bridge subserve the purposes for which the orator's bridge was erected ? They are both bridges, that is, both are structures of wood, iron and stone, crossing the river. But although generically the same, the specific difference between them may be very great ; so great that one may not be considered as infringing upon the province of the other. We shall, therefore, not allow the second exception for impertinence, but shall give the orator the benefit of it upon the final hearing of the cause.

The other exceptions to the answer, are, that it is insufficient in omitting to state the knowledge, information, and belief of the respondents in relation to certain facts stated in the bill.

The rule is that the respondents should state the point of substance, positively and certainly. No rule however, can provide for all the various difficulties in cases of this sort, but each case must be decided upon its own circumstances. Story, Eq. Pl. § 855. In general a respondent must answer " as to his knowledge, information, and belief." 2 Dan. Ch. Pr. 830 ; *Woods* v. *Morrell*, 1 Johns. Ch. 107. In this case Chancellor *Kent* says, that " As to facts not within his knowledge, he must answer as to his information, or belief, and not to his information or hearsay merely, without stating his belief one way or the other.

The general rules on the subject of exceptions to answers, are founded in good sense and sound justice, and they cannot be too well understood, nor too strictly enforced. If the respondent is not compelled to a full, frank, and explicit disclosure of every thing properly required of him, and resting in his knowledge, information, or belief, one of the most salutary ends of the jurisdiction of this court would be defeated. But if the matter be charged as within the respondent's own knowledge, he must answer positively, and not to his information or belief only. Ibid.; *Hall* v. *Hood*, 1 Paige, 404.

It is necessary, to the trial of the orator's case, that it should be proved, whether the road commissioners were interested, and whether the respondent's bridge would be injurious, and the orator therefore has a right to the respondent's best knowledge and belief. The answer is silent on both these points. The exceptions for insufficiency therefore must be sustained, and upon these points the respondents must answer further.

The respondents contend that they are not bound to answer any particular matter charged in the bill, unless they are specially interrogated in relation thereto. But we do not apprehend the rule to be so. If there be enough to call for a full, and frank disclosure of the subject-matter of the bill, it will be sufficient. The respondents are bound to deny or admit all the facts stated in the bill, with all their material circumstances, without special interrogatories for that purpose. Plain sense, and a good conscience will, without any difficulty, in most cases teach a respondent how far it is requisite to answer to the contents of a bill, and to meet the *gravamen* alleged. *Methodist Epis. Church* v. *Jaques*, 1 Johns. Ch. 65.