Leslie v. Leslie.

EDWARD LESLIE

*v.*

JOHN S. LESLIE.

1. On an application under paragraph 224 of the rules, to strike out parts of an answer, the same rules must be applied in determining whether the application shall be granted or not that would be applied in deciding whether exceptions to an answer are well taken or not.

2. All the definitions of impertinence seem to agree in this, that any matter alleged in a pleading to be entitled to stand against objection must appear in some way to be of use in deciding the questions in dispute in the cause, otherwise it is useless and should be expunged.

3. In deciding whether the matters objected to are pertinent or not, all substantial doubts as to whether they are pertinent or not are to be resolved in favor of their pertinency, and nothing should be expunged from the answer which the defendant has a right to prove, and which, if proved, can have any influence on the judgment of the court, either in deciding whether the complainant is entitled to any relief whatever, or the nature, character or extent of the relief to which he may be entitled, even down to the question whether he shall have relief with or without costs.

4. Oral evidence is not admissible to vary or alter the terms of a written contract in a case where neither fraud, accident or mistake is alleged.

On motion to strike out parts of an answer.

*Mr. Robert I. Hopper* and *Mr. Theodore Runyon,* for the motion.

*Mr. John W. Griggs, contra.*

VAN FLEET, V. C.

The complainant applies, on notice under paragraph 224 of the rules, to strike out several parts of the defendant's answer. By force of the rule just mentioned, such an application, when the pleading put on trial is an answer, takes the place of exceptions, and the question whether the application shall be granted or not must, I suppose, be decided by the application of the same

rules which would be applied in deciding whether exceptions to
an answer are well taken or not.   Though the notice under which
this application is made arraigns those parts of the answer which
it is sought to have excluded as impertinent, evasive and insuffi-
cient, and as constituting no ground of defence, the only question
which the motion presents, which in my judgment really affects
the rights of the parties, or concerns the successful administration
of justice, is whether the parts sought to be excluded are imper-
tinent or not.   If they are clearly impertinent they must be
expelled ; if not, they must be allowed to stand.

While there are many different definitions of impertinence, they
all seem to agree in this, that any matter alleged in a pleading,
to be entitled to stand against objection, must in some way appear
to be of use in deciding the questions in dispute in the particular
cause, otherwise it is useless, and serves but to cumber the record,
and hence should be expelled as worthless.   In *Woods* v. *Morrel,*
*1 Johns. Ch. 103, 106,* Chancellor Kent said : " Facts not material
to the decision are impertinent ;   *   *   *   perhaps the best test
by which to ascertain whether the matter be impertinent is to try
whether the subject of the allegation could be put in issue, and
would be matter proper to be given in evidence between the par-
ties."   While Chancellor Zabriskie, in *C. & A. R. R. Co.* v.
*Stewart, 4 C. E. Gr. 343, 345,* said : "All matters not material
to the suit, or if material which are not in issue, or which, if both
material and in issue, are set forth with great and unnecessary
prolixity, constitute impertinence."   And Chancellor Walworth,
in *Van Rennselaer* v. *Brice, 4 Paige 174, 177,* in defining what
an answer might properly allege, said that any matter which
" can have any influence whatever in the decision of the suit,
either as to the subject matter of the controversy, the particular
relief to be given, or as to costs, is not impertinent."   Vice-Chan-
cellor McCoun had previously, in *Desplaces* v. *Goris, 1 Edw. Ch.
350, 352,* stated the rule in substantially the same way.   And
Chancellor Walworth, in the subsequent case of *Hawley* v. *Wol-
verton, 5 Paige 522, 523,* in stating what matters might properly
be alleged in a bill, said : " The complainant may therefore state
any matter of evidence in the bill, or any collateral fact, the

admission of which, by the defendant, may be material in estab-
lishing the general allegations of the bill as a pleading, or in
ascertaining or determining the nature and extent or the kind
of relief to which the complainant may be entitled consintently
with the case made by the bill, or which may legally influence
the court in determining the question of costs. And where any
allegation or statement contained in the bill may thus affect the
decision of the cause if admitted by the defendant or established
by proof, it is relevant and cannot be excepted to as impertinent."
Though the doctrine here laid down was applied to a bill, still I
think it is obvious that in its essence it is just as applicable to an
answer as to a bill. The rules regulating the statement of a
defence must, in order to enable the court to get at all the facts
of the case and to discover the whole truth, be quite as liberal as
those regulating the statement of his case by a complainant. The
rule enforced by Chancellor Walworth, in *Hawley* v. *Wolverton*,
was quoted with approbation by Mr. Justice Van Syckel in pro-
nouncing the opinion of the court of errors and appeals in *Dodd*
v. *Wilkinson, 15 Stew. Eq. 647, 649*, and who, in addition, in
describing the degree of caution which should be observed in
deciding such applications as the one now under consideration,
said : " The greatest care must be taken that nothing shall be
stricken out before the whole case is before the court in the testi-
mony which may in any view of the controversy become perti-
nent." This review of the authorities shows, I think, that the
rule which should be applied in deciding the questions raised by
the present application is this, that all substantial doubts, whether
the matters objected to are pertinent or not, are to be resolved in
favor of their pertinency, and that nothing should be expunged
from the answer which the defendant has a right to prove, and
which, if proved, can have any influence on the judgment of the
court, either in deciding whether or not the complainant is enti-
tled to any relief whatever, or the nature, character or extent of
the relief to which he may be entitled, even down to the question
whether he shall have relief with or without costs.

To decide whether those parts of the defendant's answer which
are the subject of the complainant's objections are pertinent or not,

Leslie *v.* Leslie.

it is indispensable that we should know the object of the complainant's suit, and also the grounds disclosed by the bill upon which he rests his right to relief. The suit is brought to set aside an award made by two arbitrators. The award purports to have been made pursuant to an arbitration agreement entered into by the parties under seal. They were owners of all of the capital stock of the Leslie Brothers' Manufacturing Company, a corporation organized under the laws of this state, and doing business in the city of Paterson. Each held an equal number of shares. While they were thus equal in power, disputes arose between them respecting the management of the affairs of the corporation, which ultimately became so violent as to seriously endanger the welfare of the corporation. They then determined to effect a separation of their corporate interests by one making a sale of his stock to the other, but they could not agree as to which should sell and which should buy. They both wanted to buy and neither to sell. To extricate themselves from this predicament they agreed to submit the question as to which should buy and which should sell to be settled by arbitration, and thereupon appointed two arbitrators and gave them power to decide which one should sell his stock to the other; also to fix the terms of the sale, and to direct how and when the stock of the one that they decided should sell should be paid for by the one that they decided should buy. These were the principal matters that the parties agreed should be submitted to the award and determination of the arbitrators.

The arbitration agreement was signed by the parties on the 20th day of April, 1891, and three days afterwards, April 23d, the arbitrators made their award. They decided that the complainant should sell all his stock, "and any and all his rights in connection with said company," to the defendant, and that the defendant should, as part of the price of the stock, pay to the complainant $23,000. Eleven thousand dollars of this sum they directed to be paid, in the language of the award,

"in the following manner: The sum of $8,000 in cash within three days after the making of this award, and giving to the said Edward Leslie [the complainant] a receipt in full to this date of all moneys due by the said Edward

Leslie *v.* Leslie.

Leslie to the said John S. Leslie, or to said company, which amounts we, the said arbitrators, declare to be $3,000."

The other $12,000 of the $23,000 was directed to be paid in two payments of $6,000 each, one on the 1st day of May, 1892, and the other on the 1st day of May, 1893. The arbitrators also awarded, to quote the words of the award,

"to the said Edward Leslie a bonus of $1,000, to be paid on each rotary snow-plow hereafter built and sold by the said Leslie Brothers' Manufacturing Company or its assigns until the sum of $1,000 is paid on fifty plows, after which number said payment of $1,000 shall cease to be made."

And then, by a subsequent clause of the award, it is directed that the payments, which are described as a bonus, shall become due on the 1st day of May of each year, commencing with May 1st, 1892, and shall be paid on all plows "built and disposed of" during the preceding year. The complainant attributes two faults to the award. He says, *first*, that it is uncertain and inconclusive in this—that as to more than two-thirds of the sum which the arbitrators apparently intended to allow him for his stock, no present certain right to it is given; on the contrary, whether or not a right to it will ever arise is made to depend entirely on what the Leslie Brothers' Manufacturing Company or its assigns may see fit to do in the future; and he says, *secondly*, that the arbitrators exceeded their authority in this—that they attempted not only to decide in what sum he was indebted to the defendant or to the Leslie Brothers' Manufacturing Company, when in truth nothing of that kind had been submitted to them, but also to prescribe the method in which he should pay such debt. It has already been decided, in disposing of a demurrer filed to the bill, that on the assumption that the facts stated in the bill embrace all the material facts of the case, and are all true, the award is infected with the two faults imputed to it, and that they are fatal to its validity. *Leslie* v. *Leslie, 5 Dick. Ch. Rep. 103.*

With the aid of this preliminary statement we may now enter intelligently upon the consideration of the questions raised by the complainant's application. In answer to that part of the

Leslie *v.* Leslie.

bill in which it is alleged that the award is uncertain and incon-
clusive, the defendant says that it was the agreement and under-
standing of the complainant and himself, at the time they entered
into the arbitration agreement, that the arbitrators should not be
bound to award a definite sum in cash to either party as the
price of his stock, but that they might award a part of the con-
sideration to be paid contingently, either by the Leslie Brothers'
Manufacturing Company or by the purchasing party, the amount
to be dependent upon the number of snow-plows thereafter made
and sold by the corporation or the purchasing party, and that
subsequently each party laid an offer before the arbitrators show-
ing how much he was willing to pay for the stock of the other,
and stating how much he would pay in cash and how much
should be dependent on the number of snow-plows which should
thereafter be made and sold. But the agreement and under-
standing thus put forward as a ground of defence forms no part
of the contract which the parties put in writing and executed
under their seals. There is no dispute about the terms of that
contract. The defendant admits that they are correctly set forth
in the bill. The only power conferred by that agreement on the
arbitrators, in respect to the stock, was to decide which one of
the parties should sell his stock to the other, fix the price which
the vendor should be paid for his stock, and determine how and
when such price should be paid. This grant of power made it
the duty of the arbitrators to fix a price that was certain and
definite in amount, and to prescribe such terms of payment that
the vendor's right to the price fixed should be just as firmly,
finally and unalterably established as was the vendee's right to
the stock which such price represented. They were empowered
to make a sale of the stock of one by deciding which one should
sell and which one should buy, at what price the stock should
be sold, and how and when the price that they fixed should be
paid by the buyer to the seller. Now, in this situation of affairs,
it is obvious that the averment objected to was inserted in the
answer solely for the purpose of laying a foundation for the
introduction of oral evidence to vary or alter the terms of the arbi-
tration agreement; or, stated in another form, to make it proper

Leslie v. Leslie.

to show, by parol evidence, that it was agreement and understanding of the parties that larger powers should be conferred on the arbitrators than those which the.written agreement, executed by the parties under their seals, confers.    That, of course, cannot be done where neither fraud, accident or mistake is alleged, and neither is alleged in this case.    The elementary rule on this subject is this : when the parties to a contract have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagements, it is conclusively presumed that every part of their contract was reduced to writing, and all oral evidence, therefore, of what was said during the negotiation of the contract, or at the time of its execution, must be excluded on the ground that the parties have made the writing the only repository and . memorial of the truth, and whatever is not found in the writing must be understood to have been waived and abandoned.    *Van Syckel* v. *Dalrymple, 5 Stew. Eq. 233, 235; S. C. on appeal, 5 Stew. Eq. 826.*    It is thus made manifest that if the averment objected to were allowed to stand, it would be of no use to the defendant, for he would not be permitted to prove its truth.    It is, therefore, as was said by Chief-Justice Beasley, in *Camden and Amboy R. R. Co.* v. *Stewart, 6 C. E. Gr. 484, 490,* " useless in the case and serves but to cumber the record," and hence must be expunged.

Although the next two paragraphs of the answer, to which objection is made, are so inartistically drawn as to make it somewhat uncertain what precise fact the pleader intended to allege as the ground of defence, yet I think, when read together, they may be fairly understood to have been framed with a design to aver that the complainant has so far accepted the award, by consenting to a partial performance of it, that he should not now, though it is bad, be allowed to challenge its validity.    In the first of these two paragraphs it is alleged that the complainant did not give notice that he would not abide by the award until a long time after the arbitrators had completed their work and made and delivered their award, nor until after the arbitrators had left Paterson and gone to their homes in Canada ; and then in a subsequent

11

part of the same paragraph, it is said that the complainant did not object to the terms of the award " until after the time limited in the said agreement for said award had expired," and that his purpose in not giving notice of his objection earlier, and in deferring it until after the arbitrators had returned to their homes in Canada, was to prevent the fulfillment of the arbitration agreement. My difficulty with this averment is to understand, with certainty, just what the pleader means to say—whether he means that the complainant did not give notice that he would not abide by the award until a long time after it had been published or that he did not object to it before it was made. He has apparently said both. He first says that the complainant did not give notice that he would not abide by the award until a long time after the arbitrators had completed their labors and made and delivered their award and had left for their homes; and then immediately following this averment he says that the complainant did not object to the terms of the award until after the time limited in the agreement for making the award had expired, and this is followed by an allegation that the complainant's purpose in not disclosing his objection earlier, nor until after the arbitrators had left for their homes, was, not to defeat the award, but to prevent the fulfillment of the arbitration agreement. While it does not say so, in so many words, this paragraph, when read by itself, seems to have been framed to say, in a dubious sort of way, that it became the duty of the complainant the instant he knew or suspected what direction the award contained as to how he should be paid for his stock, to give notice that he would not abide by it, so as to give the arbitrators an opportunity to recall and revoke it and make another more in consonance with the terms of the submission. But the uncertainty as to the meaning of this paragraph seems to be dispelled by the next. In that it is alleged, plainly and distinctly, that when the complainant first objected to the award it had, in part, been performed with his knowledge and assent—that his stock had been transferred to the defendant with his assent, and that the defendant, with his assent, had paid the arbitrators $600 for their services. By the arbitration agreement the arbitrators were empowered to make such award, respect-

Leslie *v.* Leslie.

ing the payment of the costs and expenses of the arbitration, as they might deem proper.  By their award they fixed their compensation at $600, and directed that this sum should be borne equally by the parties, but ordered that the complainant's half should, in the first instance, be paid by the defendant and afterwards deducted from the $8,000 which, by the award, he was ordered to pay to the complainant within three days after the publication of the award.  Now, if it be true that the complainant, after he had seen the award and had examined and considered it, so that he fully understood what it took from him and what it gave him, assented to the transfer of his stock to the defendant, and also to the payment by the defendant of his half of the $600, it would seem, at least on such consideration as can be given to that question at this stage of the cause, that he has so far accepted the award as to make it binding upon him, or that, if he is still entitled to have it set aside, such relief ought not to be given to him except upon such terms as will do justice to the defendant. Under this view it is clear, I think, that the complainant's motion, in respect to the two paragraphs of the answer just considered, must be denied.

There is but a single other objection to be considered.  The complainant, in alleging that the arbitrators exceeded their authority, charges, it will be remembered, that the excess consisted in deciding not only in what sum he was indebted to the defendant or the Leslie Brothers' Manufacturing Company, but in also deciding how he should pay such debt.  The defendant, in answer to this part of the bill, says that the complainant appeared before the arbitrators and admitted that he was indebted to him (the defendant) in the sum of $3,000, and, in addition, consented and agreed that the debt so admitted should be taken into consideration by the arbitrators and be dealt with and disposed of by their award; and that it was in consequence of this admission and agreement that the arbitrators took jurisdiction of the debt and directed how it should be paid.  Now, if it be true that the complainant made the admission and agreement here charged against him, and in the manner and under the circumstances alleged, it seems that it is wholly unnecessary—indeed, I think it would be

plainly premature—to decide at this. time, whether or not, he has
thereby precluded himself from successfully challenging the
validity of the award on the ground that it deals with a matter
entirely outside of the submission.   On the present application,.
in my judgment, it is quite enough to say, that if it be true that
the complainant is responsible for one of the fatal faults which he
attributes to the award, but is, notwithstanding such culpability,.
still entitled, by the law of the land, to have the award set aside,
it would seem to be undeniable, if ordinary fairness be observed
in deciding the question of costs, that such relief should not be
given to him at the cost of the defendant.   If, under the circum-
stances stated, he is entitled to any relief whatever, it seems to
me to be beyond question that he should not be allowed to recover
costs.   This is sufficient, under the rule established by the court
of errors and appeals in *Dodd* v. *Wilkinson*, to render the aver-
ment objected to pertinent and proper.   It should not, therefore,
be expunged.

As the complainant has succeeded in part of his application
and failed in other parts, neither party will be allowed to recover
costs against the other.