WILMINGTON & W. R. CO. v. BOARD OF RAILROAD COM'RS OF STATE OF NORTH CAROLINA et al.

(Circuit Court, E. D. North Carolina. October 20, 1898.)

1. EQUITY PLEADING—IMPERTINENCE.

In a bill by a railroad company to restrain the enforcement of an order made by a state railroad commission reducing the rates of passenger fare on complainant's road, on the ground that the rates so fixed are not just and reasonable, allegations that former commissions, and also the present commission, had previously considered the question of rates at different times, and had determined that the rates then in force were just and reasonable, coupled with allegations that there had since been no change in conditions to warrant a reduction of rates, are not impertinent, nor are allegations that the commission, without just ground for discrimination, had not reduced rates on certain other roads.

2. SAME.

In such bill, however, allegations that such reduction in rates was made at the instance of the governor of the state, who was not a member of the commission; that the governor denounced a decision of the supreme court relating to the subject, and induced the commission to make the reduction complained of for the purpose of making a test case to secure the reversal of the ruling in such decision,—are of matters not relevant to the issues, and which could not be proved thereunder, and are impertinent. So long as there is a real, and not a simulated, controversy, it is immaterial by what considerations the commission was influenced in its action.

This is a suit in equity to restrain the enforcement of an order made by the railroad commission of North Carolina reducing passenger rates on complainant's road. Heard on exceptions to the bill.

Junius Davis and R. O. Burton, for complainant.

John W. Hinsdale, W. C. Douglas, and Charles A. Cook, for defendants.

SIMONTON, Circuit Judge. The Wilmington & Weldon Railroad Company, a corporation of the state of North Carolina, filed its bill of

90 F.—3

complaint against the board of railroad commissioners of that state, and L. Campbell Caldwell, John H. Pearson, and De Leon H. Abbott, personnel of said board, and Z. V. Walser, W. J. Leary, W. E. Daniel, E. W. Pou, M. C. Richardson, and H. F. Seawall, Esqs., the first named being the attorney general, and the others solicitors of judicial districts of North Carolina, charged with certain duties under the railroad commission act of the said state. The ground of complaint of the bill is that the said railroad commissioners have imposed upon the complainant certain rates for the carriage of passengers which are not just and reasonable. The prayer of the bill is an injunction to prevent these unjust and unreasonable rates from being imposed.

This case now comes up on a motion to expunge certain passages and parts of the bill as scandalous and impertinent. The equity rules Nos. 26 and 27 seem to contemplate the reference of objections of this character to a master. These, however, are not imperative, and this question can be and will be determined by the court. A bill may contain matter which is impertinent without the matter being scandalous. Story, Eq. Pl. § 270. There is nothing in this bill which is scandalous. Are the charges of impertinence unfounded? Matters in a bill are impertinent when they do not affect or concern the issues involved, when they cannot be sustained by proof which would be relevant, when no evidence with regard to them would be either necessary or proper. In a note to Mitf. Eq. Pl. (6th Am. from 5th London Ed.) p. 48, it is said that the word "impertinent," by the ancient juris consults or law counselors who gave their opinions on cases, was used merely in opposition to "pertinent." "'Ratio pertinens' is a pertinent reason; that is, a reason pertaining to the question. 'Ratio impertinens,' an impertinent reason, is an argument not pertaining to the question." Lord Eldon, in Ex parte Simpson, 15 Ves. 476, says: "If that which is stated is material to the issue, it may be false, but cannot be scandalous. If relevant, it is not impertinent, though scandalous in its nature. If relevant and pertinent, it cannot be treated as scandalous. If false, it must be dealt with in another way." "If the matter," says Walworth, Ch., "can have any influence whatever in the decision of the suit, either as to the subject-matter of the controversy, the particular relief to be given, or as to the costs, it is not impertinent." Van Rennsselaer v. Brice, 4 Paige, 174. "The best test," says Chancellor Kent, "to ascertain whether matter be impertinent, is to try whether the subject of the allegation could be put in issue, and would be matter proper to be given in evidence. Woods v. Morrell, 1 Johns. Ch. 103. Or, as put in the same case, facts not material to the decision are impertinent. Extreme caution must be exercised in considering this question, because, if the matter complained of be expunged erroneously, it is irremediable. 1 Beach, Mod. Eq. Prac. § 109.

There are 14 exceptions to the bill because of scandal and impertinence. Each refers to the printed bill, and indicates the exception by referring to lines and parts of lines on pages thereof, not setting out in hæc verba the language excepted to. The bill sets forth in detail the action of the predecessors of the present railroad commission, fixing the rate for the carriage of passengers on railroads for

all the roads in the state at $3\frac{1}{4}$ cents per mile for first-class passengers, and $2\frac{3}{4}$ cents for second-class passengers. That these rates were just and reasonable. That the question of their reduction had repeatedly been brought before that board, had been considered by them, and no reduction was granted. That it was again considered by a new board, and, after examination, the rates were deemed just and reasonable. That the question was taken up by the present board, and again examined. After examination the rates were reduced, but this was reconsidered, and the rates were restored, for the reason that they were just and reasonable. That afterwards this board again took up the matter, reduced the rates as to complainant, but refused to reduce them as to the North Carolina Railroad Company, and indefinitely postponed any action as to the Raleigh & Gaston Railroad, notwithstanding the fact that said railroad companies are in as prosperous a condition as complainant. "That there has been no such change in the general condition of affairs or in the business or earnings of complainant or in the existing circumstances as to warrant this reduction or any change of views on the part of the board." These allegations are made the subject of the 1st, 2d, 3d, 5th, 6th, 7th, 10th, 11th, 13th, and 14th exceptions.

The bill also quotes from the inaugural message of his excellency, the governor of North Carolina, in January, 1897, an expression of opinion that the passenger rates prevailing in the state were just and reasonable. That afterwards, in March, 1898, he appeared before the board of railroad commissioners, and attacked a decision of the supreme court, in what is known as the "Nebraska Case" (Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418), in language violent and extreme. It sets out his action in retaining Mr. Caldwell on the commission, although he had first voted a reduction of rates, and had then changed his mind and reversed his action and that of his board. That the governor had filed a complaint before the railroad commissioners against the complainant, the North Carolina Railroad Company and the Raleigh & Gaston Railroad Company, which resulted in the attempt to reduce the rates of complainant, but produced no reduction as to the other companies. That in this complaint he demanded that a test case be made up, not to determine whether the rates were just and reasonable, but to decide whether the board had power to reduce rates. These are embraced in 4th, 8th, 9th, and 12th exceptions.

As to the action of the railroad commission: As has been stated, the gravamen of this bill, the issue of fact in the case, to which, and to which alone, the testimony can be directed, is, are the rates sought to be imposed upon the complainant by the railroad commission just and reasonable? One of the ways of showing this is by comparing the action of previous boards—of this board itself—towards these rates with the action which they now threaten; not that this may operate by way of estoppel, nor based upon the idea that a board, once having acted, cannot change its mind, or, having acquired knowledge of facts theretofore not within reach, or for any reason unknown, cannot, notwithstanding, change a former ruling. These are questions of law, not of fact. But by way of showing that rates here-

tofore adopted and declared to be just and reasonable, after careful consideration by boards differing in personnel, under circumstances not materially differing from those at present existing, may prima facie be presumed now to be just and reasonable. So, also, as to the action of the board towards the Raleigh & Gaston Railroad and the North Carolina Railroad. If the allegation that they are as prosperous as the complainant, that their circumstances do not differ from those of the complainant, can be established by testimony, then that would be one reason for believing that rates which are just and reasonable for them are just and reasonable for complainant. This evidence would bear directly upon the issues in the case. For a similar reason, all the allegations showing the comparative earnings of these several roads could be made to bear upon, and do themselves bear directly upon, the issues in the bill. These exceptions are not well taken, and are overruled.

With respect to the action of the governor: The governor of North Carolina is not a member of the board of railroad commissioners of the state. Whatever may be his personal influence upon any one or on all the members of the commission, he cannot be said to be responsible for their action. His approval or disapproval of their action could have no more weight in deciding the issues of this case than the approval or disapproval of any other citizen of North Carolina. If the evidence otherwise can show that the rates complained of are just and reasonable, or if, on the other hand, the evidence should show that they are not just and reasonable, the commendation or disapproval of the governor could not in any way contradict, vary, or control the evidence. He could not be called upon as a witness to express his opinion, unless it be shown that he is an expert; and then his evidence would be taken exactly the same as any other expert, unaffected by the circumstances that he is the executive and commander in chief of the state. So, also, with the matter of the eighth exception,—his attack on the Nebraska Case. What possible effect could this have upon the issues in this case, and in what possible way could this attack be introduced in evidence upon the issues of the case? It may be the opinion of a learned lawyer. It is given as the opinion of a distinguished official, but a circuit court of the United States can neither be persuaded nor terrorized into a disregard of the decisions of the supreme court of the United States, or into any disrespect of that high tribunal, by the opinions, attacks, or denunciation of any individual, however high his official position may be. So, in any aspect of the case, these allegations are not relevant to the issues in the case, and are therefore impertinent.

Again, it is alleged that this is a test case made by the railroad commission, not because the rates then existing were not just and reasonable, but to obtain a reversal of the ruling in the Nebraska Case,— all this at the instance of the governor. Now, courts do not sit to try moot cases, or to relieve the minds of lawyers who differ upon the application of principles of law. No matter how important the question in the abstract may be, unless there is a real controversy, arising upon actual fact, courts will not entertain it. Railway Co. v. Wellman, 143 U. S. 345, 12 Sup. Ct. 400. But in the statements of the

bill there appears to be a real controversy. The railroad commission are of the opinion that their rulings upon rates should not or cannot be reviewed in the courts. They think that under existing decisions of the supreme court of the United States their contention may be doubtful. They desire to obtain a reversal of these decisions. To that end they exercise the power they claim in order that its validity may be questioned, and a decision rendered therein. It is a "real, vital, and earnest controversy, no doubt begun by the commission in good faith. It is by no means a moot question, and is far from a friendly difference of opinion. It does not come within the prohibition of fictitious or collusive cases, as in Lord v. Veazil, 8 How. 253, or Gaines v. Hennen, 24 How. 628. The courts are open to all who think that they have been wronged. The mere fact that cases similar to theirs have been passed upon does not shut the doors of justice to their complaint. The books abound with cases in which courts of the highest rank have reconsidered and have changed their opinions. The fact that the railroad commission has taken action with the view of having their power tested has no bearing upon the issues of this case. This issue is, are the rates which they seek to impose just and reasonable? Why they imposed them, if they imposed them at their own discretion, or if they were controlled by some master's hand, will make no difference whatever. Are the rates in themselves just and reasonable?

The 4th, 8th, 9th, and 12th exceptions are sustained. As the result of this opinion, there will be erased from the bill so much thereof as appears on the seventh page of the printed bill on line 14, beginning with the words, "and in his inaugural address," and ending with the words, "reductions in this particular," all inclusive. Also so much thereof as appears on the 8th and 9th pages of the printed bill, on line 31 of page 8, beginning with the words, "Thereupon, on said 30th day," continuing to page 9, and ending on page 9, line 21, with the words, "with which they were threatened," inclusive. Also so much of the bill as appears on printed page 9, line 22, beginning, "Thereafter, on 2d April," and ending on 30th line with the words, "Chairman of the Said Board," inclusive. And also so much of pages 10 and 11 of the printed bill as commences on page 10, line 31, with the words, "And in view of the facts," and ending on page 11, line 9, with the word "complaint."